DECISION
The Defendants, Robert E. Craven ("Craven") and Robert E. Craven 
Associates (collectively "Defendants"), move for partial summary judgment on Count II of Plaintiff's Complaint, pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure. Defendants assert that no genuine issues of material fact exist, and as such, this Court should grant Defendants' motion as a matter of law. The Plaintiff, Annette B. Finnimore ("Finnimore"), objects to the motion.
 Facts and Travel
Finnimore filed her two-count Complaint on June 19, 2003, alleging that Craven committed legal malpractice in handling Finnimore's divorce. Specifically, Finnimore based her legal malpractice claim on two separate theories: negligence (Count I) and breach of fiduciary duty (Count II). The instant Motion addresses only the breach of fiduciary duty claim.
In June of 1999, Finnimore first sought out the legal services of Craven, an attorney as well as agent of Robert E. Craven Associates, out of concern that her husband of little over two years may file divorce proceedings. Later, in September of 1999, Finnimore again met with Craven after the situation with her husband had further deteriorated. The situation did not improve, and Finnimore's husband filed for divorce in November of 1999. In response, *Page 2 
Finnimore initiated a formal attorney-client relationship with Craven, providing him with a retainer fee of $2,400.00.
Nonetheless, prior to retaining Craven as her divorce attorney in November of 1999, Finnimore had already entered into a sexual relationship with him. This sexual relationship lasted until late January or early February of 2000. After the sexual relationship ended, Craven continued to represent Finnimore in her divorce despite Finnimore's alleged expression of dissatisfaction with Craven's efforts on her behalf. Craven essentially dissuaded Finnimore from hiring another attorney by telling her that he had her "best interests in mind" and that he was "the best at trial." Accordingly, Craven participated in formal proceedings on Finnimore's behalf in March of 2000. Later in June of 2006, Craven recommended or, according to Finnimore, pressured her into agreeing to an allegedly less than equitable divorce settlement. Throughout his representation, Finnimore contends that Craven provided inadequate legal services, particularly inadequate discovery. She specifically avers that Craven failed to investigate property in Colorado and Block Island that she shared with her ex-husband. She also maintains that Craven failed to hire an appraiser to determine the value of the couple's known shared property. Finnimore asserts that she consequently suffered substantial economic damages as a result of his negligent and inadequate efforts.
Finnimore alleges in Count II of her Complaint that she suffered injury when Craven breached his fiduciary duties of trust, loyalty, and fidelity in having a sexual relationship with her. Finnimore contends that Craven took advantage of her delicate emotional state as well as her trust in him as her attorney. She stresses that these violations of trust and loyalty ultimately dissuaded her from finding new legal counsel. She further asserts that she only agreed to the inequitable divorce settlement because of her unwarranted trust. Lastly, Finnimore alleges that *Page 3 
their "inappropriate personal relationship" left Craven love struck and not interested in obtaining a favorable divorce settlement on her behalf.
Defendants have filed the instant motion, arguing that the Rhode Island Supreme Court has held that a sexual relationship between an attorney and client is not tantamount to a breach of fiduciary duty, and thus, does not create an independent cause of action for legal malpractice.[1] Instead, Defendants contend that Finnimore's remedy rests within a complaint to the disciplinary counsel. In the alternative, Defendants assert that there is no genuine factual dispute as to whether Craven's sexual relationship with Finnimore caused her alleged damages. Rather, Craven argues that Finnimore's damages, if any, rest squarely within her first count of negligence-based legal malpractice. Defendants finally contend that Finnimore cannot maintain a cause of action for breach of fiduciary duty as a matter of law because the Rhode Island Supreme Court held that the rules of professional conduct were not designed to serve as the basis for civil liability.
In her Objection, Finnimore first argues that Defendants misapplied the holding in Vallinoto v. DiSandro, 688 A.2d 830, 834 (R.I. 1997). She asserts that the Court left open the possibility of an independent cause of action for breach of fiduciary duty regarding sexual *Page 4 
misconduct between attorney and client if the harm incurred was related to the sexual misconduct or violation of the client's trust. Finnimore additionally asserts that genuine issues of material fact do exist as to whether Craven violated his fiduciary duties of trust and confidence by having a sexual relationship with her. For instance, she points to her reluctance to hire another attorney because of the relationship. Finnimore lastly concludes that her damages are directly related to their sexual relationship, emphasizing that Craven was too besotted with her to adequately represent her interests and that their relationship left her too insecure to terminate or even question Craven's legal representation.
This Court heard oral arguments on March 25, 2008.
 Standard of Review
In ruling on a motion for summary judgment, the trial judge considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits and determines whether these documents, when viewed in a light most favorable to the nonmoving party, present a genuine issue of material fact. Kirshenbaum v. Fid. Fed. Bank, F.S.B.,941 A.2d 213 (R.I. 2008); Delta Airlines, Inc. v. Neary, 785 A.2d 1123, 1126
(R.I. 2001) (citations omitted); Volino v. General Dynamics,539 A.2d 531, 532-533 (R.I 1988). It is well-settled that a genuine issue of material fact is one about which reasonable minds could differ.See, e.g., Brough v. Foley, 572 A.2d 63, 67 (R.I. 1990). The moving party bears the initial burden of establishing that no such issues exist. Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001). If the moving party is able to sustain its burden, then the opposing party must demonstrate the existence of substantial evidence to dispute that of the moving party on a material issue of fact. See Hydro-Manufacturing, Inc.v. Kayser-Roth Corp., 640 A.2d 950, 954 (R.I. 1994); Bourg v. BristolBoat Co., 705 A.2d 969, 971 (R.I. 1998). *Page 5 
While it need not disclose all of its evidence, the party opposing summary judgment must demonstrate that evidence beyond mere allegations exists to support its factual contentions. See, e.g., Ludwig v.Kowal, 419 A.2d 297, 301 (R.I. 1980); Nichols v. R.R. Beaufort Assoc.,Inc., 727 A.2d 174, 177 (R.I. 1999); Bourg, 705 A.2d at 971. The trial justice reviews the evidence without passing upon its weight and credibility, and will deny a motion for summary judgment where the party opposing the motion has demonstrated the existence of a triable issue of fact. See Palmisciano v. Burrillville Racing Ass'n., 603 A.2d 317, 320
(R.I. 1992).
Finally, summary judgment is an extreme remedy that should not be used as a substitute for trial or as a device intended to impose a difficult burden on the nonmoving party to save his or her day in court.North Am. Planning Corp. v. Guido, 110 R.I. 22, 25, 289 A.2d 423, 425
(1972). It is not for the Court to sift out cases that are weak, improbable or unlikely to succeed, and so summary judgment will be denied unless a case is "legally dead" on arrival. Mitchell v.Mitchell, 756 A.2d 179, 185 (R.I. 2000).
 Discussion
A fiduciary relationship is "a relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of that relationship . . . when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first." Black's Law Dictionary, 640 (7th ed. 1999). Furthermore, a fact-intensive inquiry is required to determine the existence of a fiduciary duty. Santucci v. Citizens Bank of RI,799 A.2d 254, 258 (R.I. 2002). The Court will consider a number of factors, "including the reliance of one party upon the other, the relationship of the parties prior to the incidents complained of, the relative business capacities or lack thereof between the parties, and the readiness of one party to follow the other's guidance in complicated transactions."Id. (citing Simpson v. Dailey, *Page 6 496 A.2d 126, 129 (R.I. 1985). In the context of a attorney-client relationship, the Rhode Island Supreme Court has held that an attorney owes the client a certain fiduciary duty because "[t]he attorney-client relationship is `one of mutual trust, confidence, and good will,' in which the attorney `is bound to * * * the most scrupulous good faith.'"DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 769 (R.I. 2000) (quoting Peirce v. Palmer, 31 R.I. 432, 450, 77 A. 201, 209 (1910);see, also, DiSandro, 688 A.2d at 844-45 (Flanders, J., dissenting) ("Among the various duties a lawyer owes to a client is the duty to `at all times * * * represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity.'").
In DiSandro, the Rhode Island Supreme Court acknowledged that "a violation of [professional-conduct rules regarding sexual conduct with a client] could certainly be relevant in a claim for breach of fiduciary obligation."[2] See DiSandro, 688 A.2d at 837 (finding legal malpractice claim without merit because sexual relationship with client did not impact attorney's representation with client). Yet, the Court also reasoned that "the mere violation of codes of professional responsibility and conduct do not automatically establish a private cause of action for damages sounding in negligence for breach of fiduciary obligations." Id. (citations omitted). In fact, the Court had earlier found in DiSandro that the client had failed to present probative evidence that attorney's representation of the client had beenquid pro quo for sexual favors or that the attorney's misrepresentation was related to the sexual relationship between the two parties.Id. at 835-36. The Court additionally held that the client had not satisfied her burden of demonstrating legal detriment or damages resulting from her sexual relationship with the attorney. Id. at 836. The client actually received more from her divorce settlement than she ever expected to receive. Id. Accordingly, the Supreme Court implicitly recognized an independent *Page 7 
cause of action for legal malpractice on a breach of fiduciary duty-based theory, but only if the client could demonstrate that the sexual misconduct led to a more general breach of the trust and loyalty owed to the client. This breach of fiduciary duty would also have to be a proximate cause of the damages suffered by the client.
Other courts provide insight as to when a legal malpractice claim under a breach of fiduciary duty theory can be distinguished from one premised on general negligence theory. For example, sister courts have required the client to demonstrate that the attorney made his professional services contingent, or quid pro quo, upon a sexual relationship with the client; that the services to the client were compromised as a result of the sexual relationship; or that the attorney utilized his legal relationship with the client to take advantage of the client's sexual vulnerability, particularly in divorce proceedings.See, e.g., Doe v. Roe, 681 N.E.2d 640, 649-650 (Ill.App. 1997) (recognizing that attorney's use of confidential information to seduce client, even in the absence of legal fees, could constitute an action for breach of fiduciary duty); Suppressed v. Suppressed, 565 N.E.2d 101
(Ill.App. 1990) (refusing to find legal malpractice because sexual activity with attorney was not linked to attorney's legal representation of client); McDaniel v. Gile, 230 Cal.App.3d 363 (Cal.App. 1991) (finding clear evidence that sexual favors requested by attorney werequid pro quo for legal services performed). These sister court decisions evidence that the client has the burden of demonstrating a strong connection between the sexual misconduct in violation of the attorney's fiduciary obligations of trust and loyalty, the alleged malpractice, and the actual damages suffered. Thus, the client must show that she suffered actual damages in the divorce action caused in part by her sexual relationship with the attorney, or the consequences therefrom, to succeed on a legal malpractice action premised on a *Page 8 
breach of fiduciary duty theory. Evidence of mere "bad or incompetent lawyering" will not suffice.
In the present case, this Court finds that Finnimore has come forth with evidence sufficient to establish genuine issues of material fact as to whether the sexual relationship with Craven constituted a breach of the fiduciary duties of trust and loyalty owed to Finnimore. These numerous questions of material fact warrant this Court's denial of Defendant's motion.
 Conclusion
Finnimore has set forth a prima facie case and has established that genuine issues of material fact exist as to the essential elements of her claim for legal malpractice premised upon a breach of fiduciary duty theory. Accordingly, Defendants' motion for summary judgment is denied. Counsel shall prepare the appropriate order for entry.
[1] Defendants construct almost the whole of their argument upon their misapplication of the Rhode Island Supreme Court's holding inVallinoto v. DiSandro in addition to their disregard of the highly distinguishable facts found therein. See 688 A.2d 830, 834 (R.I. 1997). For example, Defendants incorrectly argue that because the Court recognized that the rules of professional conduct were not "designed to be the basis of civil liability," Finnimore's remedy lay instead with a disciplinary counsel hearing and not a civil action for legal damages. This contention completely ignores the Court's acknowledgment that sexual misconduct, which is a violation of the professional rules of conduct, could also constitute evidence in a breach of fiduciary duty-based theory of legal malpractice. Id. at 837. TheDiSandro Court only addressed the claim as dicta in any case because the plaintiff had failed to plead a breach of fiduciary duty claim in her complaint.
Defendants also rely on the facts of DiSandro, which are distinguishable from the instant facts relative to damages. Finnimore has presented, or was prepared to present, evidence in the form of expert testimony of a divorce attorney as to whether she suffered damages as a result of the settlement. For instance, this expert will likely testify as to how the failure to perform adequate discovery could "induce" an attorney to insist that his client agree to an inequitable settlement agreement. In DiSandro, the Court determined that the client had not suffered any damages at all. Id. at 834. As discussedinfra, genuine factual questions clearly remain in this case as to damages that did not in DiSandro.
[2] The Supreme Court ultimately found that the plaintiff had failed to allege breach of fiduciary duty in her complaint, and as such, found that the trial court properly did not consider the expert testimony of plaintiff regarding fiduciary obligations. See DiSandro,688 A.2d at 837. *Page 1